[712 NYS2d 507]

AMERICAN HOME ASSURANCE COMPANY, Appellant, v RORY M. McDONALD et al., Respondents.

First Department, August 10, 2000

**APPEARANCES OF COUNSEL**

*Mark J. Bunim* of counsel (*Daniel P. Waxman* on the brief; *Robinson Silverman Pearce Aronsohn & Berman, L. L. P.*, attorneys), for appellant.

*David B. Golomb* of counsel (*Stephanie Brand* on the brief; *Brand & Golomb*, attorneys), for Randy K., respondent.

*Helen J. Lukievics* of counsel (*Rosen, Preminger & Bloom*, attorneys), for Helene Anisfeld, respondent.

**OPINION OF THE COURT**

MAZZARELLI, J. P.

This litigation involves a dispute as to the rights and obligations of insurer and insureds under two policies issued by plaintiff American Home Assurance Company (American Home) to two licensed social workers, defendants Rory McDonald and Helene Anisfeld.

American Home issued two identical social worker's professional liability policies to McDonald and Anisfeld. Each paid a separate premium for their policy, and each policy provided $1,000,000 in coverage and included a limitation for allegations of "sexual misconduct." It is the validity and applicability of this provision that is at issue on this appeal. The provision reads:

"**Sexual Misconduct**: The total limit of the [plaintiff's] liability hereunder shall not exceed $25,000 in the aggregate for all damages with respect to the total of all claims against any Insured(s) involving any actual or alleged erotic physical contact, or attempt thereat or proposal thereof:

"(a) by any Insured or by any other person for whom any Insured may be legally liable; and

"(b) with or to any former or current patient or client of any Insured, or with or to any relative of or member of the same household as any said patient or client or with or to any person with whom said patient or client or relative has an affectionate personal relationship.

"In the event any of the foregoing are alleged at any time, either in a complaint, during discovery, at trial or otherwise, any and all causes of action alleged and arising out of the same or related courses of professional treatment and/or relationships shall be subject to the aforesaid $25,000 aggregate limit of liability and to all other provisions of this clause. The aforesaid $25,000 aggregate limit of liability shall be part of, and not in addition to, the limits of liability otherwise afforded by this policy.

"The [plaintiff] shall not be obligated to undertake nor continue to defend any suit or proceeding subject to the aforesaid $25,000 aggregate limit of liability after said $25,000 aggregate limit of liability has been exhausted by payments for damages."

Additionally, the following statement was printed on the face of each of the policies issued by American Home to McDonald and Anisfeld: "NOTICE: * * * A SMALLER LIMIT OF LIABILITY APPLIES TO JUDGEMENTS OR SETTLEMENTS WHEN THERE ARE ALLEGATIONS OF SEXUAL MISCONDUCT (SEE THE SPECIAL PROVISION 'SEXUAL MISCONDUCT' IN THE POLICY)."

On or about September 3, 1985, Anisfeld and McDonald formed a partnership called the Center for Adults Sexually Abused as Children (Center). They shared office space and treated patients at the Center, who were designated as Center patients and billed by the Center. At the same time, McDonald and Anisfeld continued their own private practices, maintaining separate private patients with separate charts and billing records. They shared the fees generated by the Center patients, but did not share fees from their private practice patients. The social workers also had individual billing rates for their private practices.

In January 1992, while Anisfeld was on maternity leave, McDonald began treating Randy K. He continued to treat her until August 1994. During this period, Anisfeld never treated, nor even met, Randy K. The Center had no records of Randy K.'s treatment, and the Center received no payments from her.

In 1995, Randy K. commenced an action against McDonald, Anisfeld and the Center. She alleged that McDonald was negligent and careless in the counseling and psychotherapy services he rendered to her, and that he departed from the standards of good practice. Randy K. also pleaded that she was a patient of the Center and that because Anisfeld was McDonald's partner, Anisfeld was vicariously liable for the negligent acts of McDonald. Randy K. further alleged that Anisfeld, as co-director of the Center, was liable for a failure to exercise reasonable care in the supervision and running of the Center.

Although Randy K.'s complaint made no mention of sexual misconduct by McDonald, the allegations in her bill of particulars and the testimony at her examination before trial included claims of an improper sexual relationship. In a letter dated May 26, 1994, McDonald admitted that, unbeknownst to his partner, he had committed sexual misconduct with Randy K.

American Home brought this action seeking a declaration that: (i) pursuant to the sexual misconduct provision in the policies it issued to McDonald and Anisfeld, its duty to indemnify these insureds was limited to $25,000 for all claims asserted against both defendants by Randy K.; (ii) upon payment of $25,000 by American Home in defense costs or in settlement or satisfaction of Randy K.'s claims against McDonald, it had no further duty to McDonald in the underlying action; and (iii) upon payment of $25,000 by American Home in defense costs or in settlement or satisfaction of Randy K.'s claims against Anisfeld, American Home had no further duty to defendant Anisfeld in the underlying action.

Anisfeld moved for summary judgment on the ground that she did not have any involvement in the treatment of Randy K., who was McDonald's private patient. Anisfeld pointed out that the Center had no records pertaining to Randy K.'s treatment and received no payments from her. Randy K. opposed the motion, maintaining that she was a patient of the Center and that the only reason she contacted McDonald was in response to advertisements for the Center. The trial court denied Anisfeld's motion, finding outstanding factual issues as to whether Randy K. had been a patient of the Center, or McDonald's private patient.

American Home then moved for summary judgment, seeking a declaration as to the applicability of the sexual misconduct provision in the insurance policy. Randy K. opposed the motion and cross-moved for an order directing plaintiff to comply with all discovery demands and to stay any further applications pending the development of a complete record. Randy K. argued that the $25,000 limitation violated public policy since it restricted coverage of a therapist's nonsexual misconduct when sexual misconduct occurred in the same or related course of professional treatment, even where the sexual misconduct was immaterial to the claims of nonsexual misconduct. McDonald did not appear or oppose the motion. However, Randy K. also argued that the provision was against public policy because it failed to recognize the possibility of concurrent causes of the patient's injury. Randy K. specifically referred to instances of misconduct by McDonald that were not sexual in nature and, thus, not subject to the special provision of the policy. Anisfeld also opposed plaintiff's motion and asserted that her insurance should not be limited because Randy K. was neither her nor the Center's patient. In addition, Anisfeld pointed out that she had her own individual policy and was not associated with McDonald for insurance purposes.

The court granted plaintiff's motion in part and denied it in part. Relying on *American Home Assur. Co. v Cohen* (124 Wash 2d 865, 881 P2d 1001 [Sup Ct Wash]), the court determined that limiting coverage to $25,000 for claims that do not involve sexual misconduct once sexual misconduct is alleged to have occurred violates the public policy of New York. The court further held that the sexual misconduct provision limited plaintiff's liability to $25,000 for claims asserted against McDonald in the underlying action involving sexual misconduct only; that the sexual misconduct provision did not apply to Randy K.'s claims against Anisfeld in the underlying action; and that plaintiff's duty to indemnify McDonald and Anisfeld for punitive damages was limited to $25,000. We modify those determinations to the extent that we find that the provision in plaintiff's policies limiting coverage for actions involving sexual misconduct does not violate New York public policy, and we conclude that Randy K. was not a patient of Anisfeld for purposes of determining American Home's responsibilities to her. However, we agree with the IAS Court's conclusion that the unambiguous language of the sexual misconduct provision in Anisfeld's separate policy does not apply to limit plaintiff's duty to defend and indemnify this defendant against general claims of negligence.

It was error not to grant that portion of American Home's summary judgment motion seeking a declaration as to its duty to indemnify McDonald. This obligation is limited to $25,000 for all claims asserted by Randy K. against him in the underlying action, and plaintiff has no further duty to defend McDonald in the underlying action after payment of $25,000 in defense costs or in settlement or satisfaction of the claims asserted against him (*see*, *American Home Assur. Co. v Stone*, 61 F3d 1321 [7th Cir 1995] [identical provision does not violate Illinois public policy]; *American Home Assur. Co. v Stephens*, 42 Tex Sup Ct J 172, 982 SW2d 370 [same in Texas]; *American Home Assur. Co. v Levy*, 179 Misc 2d 773 [Sup Ct, Suffolk County] [same]; *but see*, *American Home Assur. Co. v Cohen*, 124 Wash 2d 865, 881 P2d 1001, *supra* [provision violates State public policy]).

We agree with the various other jurisdictions that have concluded that sexual misconduct provisions, such as the one at issue here, do not violate public policy. The sexual misconduct limitation in the instant policies is clear and unambiguous, and gives the policyholder clear notice of the restrictions. It is not contrary to the public interest to allow insurers to of-

fer varying amounts of coverage depending on the nature of the claim asserted against the insured, especially where, as here, there is no requirement by New York State that social workers and psychotherapists carry malpractice insurance. Moreover, the sexual misconduct limitation does not violate any regulations of the Superintendent of Insurance (*American Home Assur. Co. v Levy, supra,* at 781), and, as our Court of Appeals has stated "[i]nasmuch as the particular clause in question did not violate any statutory mandate or prohibition or any regulation of the Superintendent of Insurance, this court cannot say that the clause was violative of public policy" (*Loring & Assocs. v Continental Cas. Co.,* 56 NY2d 848, 850). Further, that the provision benefits the insurer in this situation is not a sufficient ground for setting it aside as unconscionable (*Matter of Allstate Ins. Co. v Balsamello,* 227 AD2d 616, 617).

There is nothing in the record to support the trial court's concern that the sexual misconduct provision would have a chilling effect upon patients' reporting of the sexual misconduct of their therapists, or that patients are even aware of the amount of their therapists' available coverage. In fact, a more likely inference is that the limitation of coverage would dissuade a psychologist, who might be so inclined, from committing acts of sexual misconduct with his or her patients because he or she knows that his or her insurance policy will not fully cover damages in the event of a lawsuit (*see, McConaghy v RLI Ins. Co.,* 882 F Supp 540, 543 [" 'it does not follow that the best way to discourage [sexual misconduct] is to ensure that its perpetrators are fully protected from adverse financial consequences' (citation omitted)"]).

Accordingly, we declare that the sexual misconduct provision does not violate New York's public policy and that its application limits American Home's duty to defend and indemnify McDonald against all claims asserted against him to $25,000.

## American Home's Responsibility to Anisfeld

Randy K.'s underlying complaint alleged that defendant Anisfeld was vicariously liable for her partner's sexual misconduct, and it alleged that she was independently negligent in carrying out her responsibilities at the Center. Some examples of Randy K.'s specific claims, amplified in her bill of particulars, were that Anisfeld negligently and carelessly allowed Randy K. to be treated in a way that blurred the proper professional boundaries; that she failed to properly supervise the profes-

sional staff; failed to properly inform herself of improper treatment and to prevent same; failed to establish and follow the proper policies and procedures for the supervision of therapists; maintained a practice in a partnership with an impaired therapist without control or supervision of his cases; and failed to protect patients from impaired therapists.

To trigger the "sexual misconduct" provision in the policy, there must be allegations of sexual misconduct "(a) by any Insured or by any other person for whom any Insured may be legally liable; *and* (b) *with or to any former or current patient or client of any Insured*" (emphasis supplied). Here, the record conclusively establishes that Randy K. was exclusively McDonald's patient. Anisfeld was on maternity leave when Randy K. came under McDonald's care. She never met Randy K. and never participated in Randy K.'s treatment. It is clear that Randy K. was never the individual patient of Anisfeld and the "sexual misconduct" provision is not triggered as to her. The Center has no records of Randy K. as a patient, and Randy K. was never billed by the Center. Randy K.'s allegations against Anisfeld of negligence in the supervision and operation of the Center and its staff are phrased broadly, and tied to McDonald. As to those claims, and without passing on their merit, we find that the $25,000 sexual misconduct exclusion does not limit American Home's duty to defend and indemnify Anisfeld.

*Morgan v Greater N. Y. Taxpayers Mut. Ins. Assn.* (305 NY 243) is instructive. In that case, plaintiff had an unsatisfied judgment against co-partners for personal injuries sustained when one of the partners assaulted him, which he sought to recover from the other partner's insurer. The partner who committed the assault was a named additional assured under the policy, and the Court of Appeals was faced with the issue of "whether the provision excluding from coverage assaults committed by the assured denies to the named assured coverage for liability imposed upon him by reason of an assault committed by a defined additional insured" (*supra,* at 247-248). The Court of Appeals examined the public policy supporting the exclusion, that is, not to indemnify a person for losses incurred as a consequence of his criminal acts, and found that it would not be furthered by applying the exclusion to the partner who had committed no crime. The Court thus concluded that "since defendant has undertaken separate obligations to each of the assureds, an assault committed by an assured relieves the defendant insurer of its obligation to that particular assured but not of its obligations to the other assureds" (*supra,* at 249).

Because McDonald and Anisfeld had separate insurance policies, these facts are even stronger than those presented in *Morgan* with respect to separate treatment of each individual. Here, the purpose of the "sexual misconduct" exclusion is to limit the insurance company's financial responsibility where there are allegations that a named insured social worker has committed sexual misconduct. However, Anisfeld was the only named insured in her policy* and there are no allegations that she committed any sexual misconduct with Randy K. When applying for the insurance, Anisfeld stated that she was not applying on behalf of a partnership, and that she was not involved in sexual misconduct with any current or former patient. No reasonable person in Anisfeld's position would expect that the "sexual misconduct" provision would limit her insurance company's duties to defend and indemnify her for Randy K.'s negligence claims against her (*see, Morgan v Greater N. Y. Taxpayers Mut. Ins. Assn., supra*, at 249; *see also, Greaves v Public Serv. Mut. Ins. Co.*, 5 NY2d 120 [additional assured to be treated as if separately covered by the policy]). In sum, the unambiguous language of the sexual misconduct provision in Anisfeld's insurance policy was not triggered by McDonald's alleged conduct with Randy K., and American Home should afford Anisfeld full coverage for the defense and indemnification of Randy K.'s negligence claims according to the remaining terms of her policy.

Accordingly, the order, Supreme Court, New York County (Barbara Kapnick, J.), entered October 15, 1999, as amended by order entered February 8, 2000, which, to the extent appealed from, denied that portion of plaintiff insurer's motion for summary judgment for a declaration (i) that its duty to indemnify its insureds is limited to $25,000 each for all claims, including those not involving sexual misconduct, asserted against the insureds in the underlying action; and (ii) that as soon as plaintiff makes payment of $25,000 to each of the insureds in defense costs or in settlement or satisfaction of the claims against them, it has no further duty to defend them in the underlying action, should be modified, on the law, to grant the motion to the extent of declaring (i) that plaintiff's duty to indemnify defendant McDonald is limited to the amount of $25,000, including those claims not involving sexual misconduct, and (ii) that plaintiff's duty to indemnify defendant Anis-

---

* Neither the Center nor McDonald was listed in Anisfeld's policy as an additional insured.

feld is not limited by the sexual misconduct limitation provision of her policy, and otherwise affirmed, without costs.

Motion to file supplemental record granted.

ELLERIN, LERNER, RUBIN and ANDRIAS, JJ., concur.

Order, Supreme Court, New York County, entered October 15, 1999, as amended by order entered February 8, 2000, modified, on the law, to grant the motion of plaintiff insurer to the extent of declaring (i) that plaintiff's duty to indemnify defendant McDonald is limited to the amount of $25,000, including those claims not involving sexual misconduct, and (ii) that plaintiff's duty to indemnify defendant Anisfeld is not limited by the sexual misconduct limitation provision of her policy, and otherwise affirmed, without costs. The motion to file a supplemental record is granted.